Daniel C. Girard (State Bar No. 114826)
dcg@girardgibbs.com
Jonathan K. Levine (State Bar No. 220289)
jkl@girardgibbs.com
Aaron M. Sheanin (State Bar No. 214472)
ams@girardgibbs.com
Christina H. C. Sharp (State Bar No. 245869)
chc@girardgibbs.com
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Attorneys for Plaintiff Lindell Van Dyke,
As Trustee For The Van Dyke Family Trust,
and Class Member Sandra Olsen

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDELL VAN DYKE, AS TRUSTEE FOR THE VAN DYKE FAMILY TRUST, Individually And On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & CO. and WELLS FARGO INVESTMENTS, LLC,<br><br>Defendants. | Case No. CV-08-1962 (JSW)<br><br>**VAN DYKE GROUP'S NOTICE OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL AND POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     August 22, 2008<br>Time:    9:00 a.m.<br>Location: Courtroom 2, 17th Floor |

VAN DYKE GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF

TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................ 2

POINTS AND AUTHORITIES ............................................................................................... 2

SUMMARY OF ARGUMENT ................................................................................................ 2

FACTUAL BACKGROUND ................................................................................................... 4

ARGUMENT ............................................................................................................................ 6

I.    THE VAN DYKE GROUP SHOULD BE APPOINTED LEAD PLAINTIFF ....................... 6

    A.    The Procedure Required By The PSLRA ................................................................. 6

    B.    The Van Dyke Group Satisfies The Lead Plaintiff Requirements Of The PSLRA ...... 7

        1.    The Van Dyke Group Has Complied With The PSLRA And Should Be Appointed Lead Plaintiff ................................................................................ 7

        2.    The Van Dyke Group Has The Requisite Financial Interest In The Relief Sought By The Class ................................................................................... 7

        3.    The Van Dyke Group Otherwise Satisfies Rule 23 ....................................... 9

        4.    Aggregation of the Van Dyke Group's Financial Interests Is Appropriate .... 11

II.    THE VAN DYKE GROUP'S CHOICE OF COUNSEL SHOULD BE APPROVED ........... 12

CONCLUSION ....................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) ................................................................................................10

*In re Cavanaugh*
   306 F.3d 726 (9th Cir. 2002) ...............................................................................3, 7, 8, 9, 11

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ....................................................................................................7

*In re Critical Path, Inc. Sec. Litig.*
   156 F. Supp. 2d 1102 (N.D. Cal. 2001)...................................................................................8

*In re Ditech Communs. Corp. Secs. Litig.*
   2005 U.S. Dist. LEXIS 40963 (N.D. Cal. Dec. 19, 2005)...................................................3, 9

*In re Informix Corp. Secs. Litig.*
   1997 U.S. Dist. LEXIS 23687 (N.D. Cal. Oct. 17, 1997) .....................................................11

*In re Network Assocs., Inc., Sec. Litig.*
   76 F. Supp. 2d 1017 (N.D. Cal. 1999)....................................................................................8

*In re Versata, Inc.*
   2001 U.S. Dist. LEXIS 24270 (N.D. Cal. Aug. 17, 2001) ...................................................11

*Reimer v. Ambac Fin. Group, Inc.*
   2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008) (Buchwald, J.)........................11, 12

*Rubke v. Capitol Bancorp, Ltd.*
   2006 U.S. Dist. LEXIS 25170 (N.D. Cal. Mar. 31, 2006) ....................................................10

*Steiner v. Aurora Foods Inc.*
   2000 U.S. Dist. LEXIS 20341 (N.D. Cal. June 5, 2000).....................................................11

*Weisz v. Calpine Corp.*
   2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 15, 2002) .....................................................8

*Weltz v. Lee*
   199 F.R.D. 129, 132 (S.D.N.Y. 2001)..................................................................................11

*Zucker v. Zoran Corp.*
   2006 U.S. Dist. LEXIS 93469 (N.D. Cal. Dec. 11, 2006).....................................................7

## TABLE OF AUTHORITIES

**Statutes**

15 U.S.C. § 78u-4(a) .................................................................................................... passim

Fed. R. Civ. P. 23 ............................................................................... 2, 3, 6, 7, 9, 10, 11

Fed. R. Civ. P. 6(a)..............................................................................................................7

## NOTICE OF MOTION AND MOTION

Please take notice that on August 22, 2008, at 9:00 a.m., or as soon thereafter as counsel may be heard, Plaintiff Lindell Van Dyke and Class Member Sandra Olsen (collectively, the "Van Dyke Group" or "Movants"), by and through their attorneys of record herein, will move this Court for an order: (i) appointing them as Lead Plaintiff; (ii) approving the proposed Lead Plaintiff's selection of Girard Gibbs LLP ("Girard Gibbs") to serve as Lead Counsel; and (iii) granting such other and further relief as the Court may deem just and proper. This Motion is based upon this Notice and the accompanying Points and Authorities, the Declaration of Jonathan K. Levine in Support of the Van Dyke Group's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel and the evidence attached thereto, oral argument of counsel and all other papers on file herein.

By this Motion, the Van Dyke Group seeks appointment as Lead Plaintiff and approval of its selection of counsel pursuant to the applicable provisions of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3).

## POINTS AND AUTHORITIES

The Van Dyke Group submits that it should be appointed Lead Plaintiff because it: (1) timely filed a motion for appointment of Lead Plaintiff; (2) has a substantial financial interest in the action, as its members hold $6,500,000 worth of auction rate securities they purchased from Defendants Wells Fargo & Co. and Wells Fargo Investments, LLC (collectively "Well Fargo") during the Class Period; and (3) will adequately represent the interests of the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). As the presumptive Lead Plaintiff selects counsel to represent the Class under the PSLRA, and Girard Gibbs is experienced in the prosecution of securities class actions and will adequately represent the interests of Class members, the Court should also approve the Van Dyke Group's selection of counsel to represent the Class.

## SUMMARY OF ARGUMENT

Because the Van Dyke Group has complied with the requirements of the PSLRA, has a substantial financial interest in this action and meets the relevant requirements of Fed. R. Civ. P. 23, the Van Dyke Group respectfully submits that the Court should appoint it Lead Plaintiff and approve its selection of counsel. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

The PSLRA presumes that the most adequate plaintiff is the movant with "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). To determine which movant has the largest financial interest, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). On February 13, 2008, upon the collapse of the auction rate securities market and the close of the Class Period, the Van Dyke Group collectively held auction rate securities with a par value of $6,500,000. Movants submit that the amount of auction rate securities that remain illiquid—$6,500,000— is a conservative measure of financial interest. To the best of the Van Dyke Group's knowledge, no other applicant with a greater financial interest seeks appointment as Lead Plaintiff. The Van Dyke Group is thus the presumptive Lead Plaintiff in this action.

The Van Dyke Group also satisfies the relevant prerequisites of typicality and adequacy under Fed. R. Civ. P. 23. *See In re Ditech Communs. Corp. Secs. Litig.*, 2005 U.S. Dist. LEXIS 40963, *3 (N.D. Cal. Dec. 19, 2005) (White, J.) (citation omitted). As the Van Dyke Group's claims arise from the same course of events and are based on the same legal theories as the claims of class members, Movants are typical. Movants are also adequate representatives of the Class. The Van Dyke Group's interests are aligned with those of the Class and the Van Dyke Group has demonstrated that it will protect the interests of the Class by retaining experienced and competent counsel. The Van Dyke Group is also not subject to any unique defenses or other legal hindrances.

Aggregation of the Van Dyke Group's financial interests is appropriate. The PSLRA on its face contemplates aggregation, and courts in this district and nationwide consistently permit aggregation of proposed lead plaintiff's financial interests. The Van Dyke Group, comprised of two individuals, is not excessively large. Movants have informed themselves about this litigation, and have expressed their willingness to serve as Lead Plaintiff and manage the litigation effectively. Aggregation of their claims is therefore appropriate.

Finally, the Van Dyke Group has selected capable Lead Counsel. Girard Gibbs is well-versed in the auction rate securities debacle and has extensive experience litigating securities class and non-class actions. For these reasons, the Court should approve the Van Dyke Group's selection of Lead Counsel, and its motion for appointment as Lead Plaintiff.

## FACTUAL BACKGROUND

This litigation arises out of "the hostage crisis otherwise known as the auction-rate securities market." Gretchen Morgenson, "How to Clear a Road to Redemption," *New York Times* (May 4, 2008).[1] As the *New York Times* explained recently, "Some $300 billion worth of investors' funds—advertised as being easy as pie to cash in—are still locked up. And the brokerage firms that got investors into this mess are doing little to help." *Id.*

As described in the Complaint filed in this action, auction rate securities are long-term variable-rate instruments. Their interest rates reset at periodic auctions, generally held every 7, 28 or 35 days. Auction rate securities include collateralized student loan debt obligations, preferred shares of closed-end mutual funds, and long-term municipal debt. Despite the complex, long-term nature of these instruments, broker-dealers marketed auction rate securities to investors as risk-free, cash-equivalent alternatives to money-market funds.

Wells Fargo was a substantial seller of auction rate securities. Through its financial advisors and brokers, Wells Fargo represented to investors in its uniform sales presentations and written materials that auction rate securities were the same as cash and were safe, highly liquid, short-term vehicles suitable for any investor with at least $25,000 of available cash and as little as one week in which to invest. Wells Fargo received substantial commissions on the sales of auction rate securities from investors.

Wells Fargo knew, but failed to disclose, material facts about the auction market and the auction rate securities it sold to investors including that: (1) auction rate securities were not cash alternatives, like money market funds, but were instead, complex, long-term financial instruments with 30-year maturity dates, or longer; (2) auction rate securities were only liquid at the time of sale because broker-dealers were artificially supporting and manipulating the auction market to maintain the appearance of liquidity and stability; (3) broker-dealers routinely intervened in auctions for their own benefit, to set rates and prevent auctions from failing; and (4) Wells Fargo continued to market auction rate securities as liquid investments, even after it had determined that broker-dealers were likely to withdraw their

---

[1] http://www.nytimes.com/2008/05/04/business/04gret.html?scp=2&sq=auction+rate&st=nyt.

support for the periodic auctions which would result in a "freeze" of the auction rate securities market. As a result of these material non-disclosures, the value of the auction rate securities Wells Fargo sold was not as represented.

On February 13, 2008, all of the major broker-dealers withdrew their support for the auction rate securities market, causing 87 percent of all auctions to fail. The collapse of the auction rate securities market rendered more than $300 billion of outstanding securities illiquid. An analyst for Citigroup, the largest underwriter of auction rate securities, recently predicted that the auction rate securities market will "cease to exist" entirely and that the collapse of the auction rate securities market could cause investors to "stop using the services of their brokerage and/or asset management firms as a result of a loss of trust." Martin Z. Braun, "Auction-Rate Market Will 'Cease to Exist,' Citi Says (Update2)," *Bloomberg* (April 15, 2008).[2]

The auction rate securities debacle has caught the attention of federal, state and industry regulators. Investigations are now being conducted by the U.S. Securities and Exchange Commission, the Financial Industry Regulatory Authority, the State of New York, and a nine-state task force including Florida, Georgia, Illinois, Massachusetts, Missouri, New Hampshire, New Jersey, Texas and Washington.[3]

Investors are also pursuing their rights. This class action asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of all persons and entities who purchased auction rate securities from Wells Fargo between April 14, 2003 and February 13, 2008 (the date of the collapse of the auction rate securities market), inclusive, and continued to hold such securities as of February 13, 2008.

///

///

///

---

[2] http://www.bloomberg.com/apps/news?pid=20601213&refer=home&sid=aa6nZyh.SrNU.

[3] http://www.bloomberg.com/apps/news?pid=20601087&refer=home&sid=awpbOuGDDcs8.

- 5 -
VAN DYKE GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF

# ARGUMENT

## I. THE VAN DYKE GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The Van Dyke Group consists of two individuals who collectively hold $6,500,000 in auction rate securities they purchased from Wells Fargo during the Class Period.[4] The Van Dyke Group respectfully submits that it should be appointed Lead Plaintiff because it has complied with all of the PSLRA's requirements, has demonstrated the largest financial interest in this litigation, and otherwise meets the relevant requirements of Fed. R. Civ. P. 23.

### A. The Procedure Required By The PSLRA

The PSLRA establishes the procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).

The plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the complaint, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). The Van Dyke Group's counsel, on behalf of named plaintiff and movant Lindell Van Dyke, were the first to file a class action subject to the PSLRA relating to Wells Fargo's sale of auction rate securities, and caused notice to be published on *Business Wire* on April 14, 2008. *See* Declaration of Jonathan K. Levine In Support of the Motion of for Appointment of the Van Dyke Group as Lead Plaintiff and Approval of Selection of Counsel ("Levine Dec."), Ex. A. Within 60 days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

The PSLRA also provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

---

[4] Movant Lindell Van Dyke seeks appointment as trustee of the Van Dyke Family Trust.

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that:
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See generally In re Cavanaugh*, 306 F.3d at 729-31.

### B. The Van Dyke Group Satisfies The Lead Plaintiff Requirements Of The PSLRA

#### 1. The Van Dyke Group Has Complied With The PSLRA And Should Be Appointed Lead Plaintiff

As notice of the filing of the initial action was published on April 14, 2008, the time period in which class members may move to be appointed lead plaintiff in this case expires on June 13, 2008. *See* Levine Decl., Ex. A; 15 U.S.C. § 78u-4(a)(3)(A) and (B); Fed. R. Civ. P. 6(a). The Van Dyke Group's application, filed on June 13, 2008, is thus timely. Movants have reviewed the complaint and are willing to serve as representative parties on behalf of the Class. *See* Levine Decl., Exs. B and C (Movants' certifications). In addition, the Van Dyke Group has selected and retained competent counsel to represent them and the Class. *See id.*, Ex. D (firm resume of Girard Gibbs). Accordingly, the Van Dyke Group has satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B), and the Court should approve its application for appointment as Lead Plaintiff and its selection of counsel to represent the Class.

#### 2. The Van Dyke Group Has The Requisite Financial Interest In The Relief Sought By The Class

Pursuant to the PSLRA, identification of the most adequate plaintiff "begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (*quoting* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). "In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d at 730. The PSLRA does not indicate a specific method for calculating which plaintiff has the "largest financial interest." *See Zucker v. Zoran Corp.*, 2006 U.S. Dist. LEXIS 93469, *7 (N.D. Cal. Dec. 11, 2006)

(Alsup, J.). The Ninth Circuit has instructed that, to calculate each movant's financial interest in the litigation, the Court should "select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d at 730, n.4. Generally, courts, including several in this district, have "equated 'largest financial interest' with the amount of potential recovery." *Weisz v. Calpine Corp.*, 2002 U.S. Dist. LEXIS 27831, *18 (N.D. Cal. Aug. 15, 2002) (Armstrong, J.) (citing *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1107-08 (N.D. Cal. 2001) (Orrick, J.); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1030 (N.D. Cal. 1999) (Alsup, J.)); *see also Zucker*, 2006 U.S. Dist. LEXIS 93469 at *7 (accord).

The Van Dyke Group has a substantial financial interest in this case. In January 2008, approximately one month before the auction market collapsed, Mr. Van Dyke purchased $2,350,000 in auction rate securities from Well Fargo. *See* Levine Decl., Ex. B, Attachment A. In May 2007, Ms. Olsen purchased $4,150,000 in auction rate securities from Wells Fargo. *See id.*, Ex. C, Attachment A, Wells Fargo had not disclosed the risks associated with auction rate securities prior to selling them to either Mr. Van Dyke or Ms. Olsen.

At the close of the Class Period on February 13, 2008, the Van Dyke Group held auction rate securities with a par value of $6,500,000. *See* Levine Decl., Ex. E (analysis of the Van Dyke Group's Class Period transactions). Upon the collapse of the auction market at the end of the Class Period, all of those securities were rendered illiquid, precluding Movants from selling their shares on the auction market. None of those securities have been redeemed by their issuers since the end of the Class Period. As a result, all of the Van Dyke Group's auction rate securities remain illiquid.

Because Wells Fargo sold auction rate securities as highly liquid cash equivalents, and these securities are now illiquid, each movant's financial interest can be measured conservatively by the amount of his or her investment that remains illiquid — in other words, the par value of the auction rate securities that were purchased from Wells Fargo during the Class Period that have not been redeemed by the issuer. Under this formulation, the Van Dyke Group's financial interest for purposes of this motion, is $6,500,000 — the combined par value of the shares of now-illiquid auction rate securities Movants purchased from Wells Fargo during the Class Period and held at the end of the Class Period that were

VAN DYKE GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF

not redeemed after the Class Period.[5] Given the nature of the securities at issue, this is an objective and conservative method for calculating the financial interest of each movant seeking appointment as Lead Plaintiff under the PSLRA.

To the best of the Van Dyke Group's knowledge, no other applicant with a greater financial interest seeks appointment as Lead Plaintiff in this matter. The Van Dyke Group thus satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

### 3.   The Van Dyke Group Otherwise Satisfies Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two — typicality and adequacy — concern the personal characteristics of the class representative. Consequently, a court deciding a lead plaintiff motion should limit its inquiry to the typicality and adequacy prongs of Rule 23(a). *See In re Ditech Communs. Corp. Secs. Litig.*, 2005 U.S. Dist. LEXIS 40963 at *3 (citing *In re Cavanaugh*, 306 F.3d at 730, n.5: "Rule 23(a) requires that the plaintiff must assert claims or defenses that are typical of the claims or defenses of the class and the court must find that the representative parties will fairly and adequately protect the interests of the class."). "This analysis need only be preliminary at this stage in the proceedings and need not be as searching as the one triggered by a motion for class certification." *Id*. Movants satisfy both the typicality and adequacy requirements of Rule 23.

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists where the plaintiff's claims arise from the same course of events and are

---

[5] Although some issuers have announced partial redemptions of certain auction rate securities held by the Van Dyke Group, as of this filing, no such redemptions have occurred.

based on similar legal theories as the claims of the class members. Typicality does not require that there be no factual differences between the class representative and the class members, because it is the generalized nature of the claims asserted that determines whether the class representative is typical. *See, e.g., Rubke v. Capitol Bancorp, Ltd.*, 2006 U.S. Dist. LEXIS 25170, *8 (N.D. Cal. Mar. 31, 2006) (Hamilton, J.) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998): "A plaintiff satisfies the 'typicality' requirement if her claims or defenses 'are reasonably co-extensive with those of absent class members; they need not be identical.'").

Movants are typical because, like all other Class members, they: (1) purchased auction rate securities from Wells Fargo during the Class Period as a result of Wells Fargo's allegedly materially false and misleading statements and omissions concerning the liquidity and risk characteristics of the auction rate securities and the auction market; (2) held auction rate securities on the date that all broker-dealers withdrew their support for the auction market; and (3) are consequently unable to sell their auction rate securities at par value. As the Van Dyke Group's claims and the claims of other Class members arise out of the same course of events, the Van Dyke Group satisfies the typicality requirement.

Under Rule 23(a)(4), the representative party must also "fairly and adequately protect the interests of the class." "To fulfill the 'adequacy' requirement, the lead plaintiff must demonstrate the ability to fairly and adequately protect the interests of the class. To establish this, a plaintiff must demonstrate that they have no interests in conflict with other class members and the ability, with counsel, to vigorously prosecute the action." *Rubke*, 2006 U.S. Dist. LEXIS 25170, at *8-9 (citing, *inter alia*, *Hanlon*, 150 F.3d at 1020; internal citations omitted).

Movants are adequate representatives of the Class. Their interests are aligned with those of Class members, and there is no evidence of any antagonism between their interests and those of the Class. Like Class members, the Van Dyke Group acquired now-illiquid auction rate securities based on Wells Fargo's material non-disclosures and misleading statements about auction rate securities and the auction market. Further, the Van Dyke Group has taken significant steps that demonstrate it will protect the interests of the Class: it has retained competent and experienced counsel to prosecute these claims and to continue their investigation into the facts giving rise to this action. The Van Dyke Group's

VAN DYKE GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF

proposed counsel are qualified, experienced and able to conduct this complex litigation in a professional manner. The Van Dyke Group is not subject to any unique defenses or other legal hindrances. Finally, the Van Dyke Group, which currently holds $6,500,000 worth of illiquid auction rate securities purchased from Wells Fargo during the Class Period, has a sufficient interest in the outcome of this case to ensure vigorous advocacy. For these reasons, the Van Dyke Group *prima facie* satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

        **4.    Aggregation of the Van Dyke Group's Financial Interests Is Appropriate**

The PSLRA on its face contemplates appointment of more than one class member as lead plaintiff, so long as the investor group will be capable of representing the interests of the class. The PSLRA provides that a court "shall appoint as lead plaintiff the member ***or members*** of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added). Under the PSLRA, a "person or group of persons" may be an adequate lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

The Ninth Circuit has previously declined specifically to address "whether a group can satisfy the 'largest financial interest' requirement by aggregating losses." *In re Cavanaugh*, 306 F.3d at 731, n.8. Several courts in this district have permitted aggregated investors to serve as Lead Plaintiff. *See, e.g., In re Versata, Inc.*, 2001 U.S. Dist. LEXIS 24270, *25-26 (N.D. Cal. Aug. 17, 2001) (Illston, J.); *Steiner v. Aurora Foods Inc.*, 2000 U.S. Dist. LEXIS 20341, *19 (N.D. Cal. June 5, 2000) (Wilken, J.); *In re Informix Corp. Secs. Litig.*, 1997 U.S. Dist. LEXIS 23687, *9-10 (N.D. Cal. Oct. 17, 1997) (Armstrong, J.). Such practice is consistent with the view of the majority of the nation's courts. *See, e.g., Reimer v. Ambac Fin. Group, Inc.*, 2008 U.S. Dist. LEXIS 38729, *7-8 (S.D.N.Y. May 9, 2008) (Buchwald, J.) (explaining that disallowing unrelated class members to aggregate and serve as lead plaintiff is "now the minority view"); *Weltz v. Lee,* 199 F.R.D. 129, 132 (S.D.N.Y. 2001) (Batts, J.) ("The majority of courts . . . have permitted the aggregation of claims for the purposes of becoming lead plaintiff."); *Steiner*, 2000 U.S. Dist. LEXIS 20341, at *12 ("[M]ost courts have concluded that the PSLRA authorizes plaintiffs to aggregate their losses for purposes of the lead plaintiff determination."). Courts recognize, however, that appointment of an aggregate lead plaintiff may be inappropriate where the group is excessively large and unwieldy. *See In re Informix Corp. Secs. Litig.*, 1997 U.S. Dist.

VAN DYKE GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF

LEXIS 23687, at *12 (denying motion to appoint 979 investors as lead plaintiff in favor of alternative motion to appoint 9 investors); *Reimer*, 2008 U.S. Dist. LEXIS 38729, at *8.

The Van Dyke Group is comprised of two individuals who purchased auction rate securities and held them when the auction market collapsed. Movants have informed themselves about this litigation, and expect to participate directly in the lawsuit. They have also stated their willingness to serve as Lead Plaintiff along with other qualified class representatives. *See* Levine Decl., Ex. B at ¶ 3, Ex. C at ¶ 3. As a group, they are neither too large nor too cumbersome to manage this litigation effectively. Accordingly, aggregation of their claims is appropriate for purposes of the Lead Plaintiff appointment.

## II. THE VAN DYKE GROUP'S CHOICE OF COUNSEL SHOULD BE APPROVED

The Van Dyke Group has selected Girard Gibbs as Lead Counsel. As demonstrated by its firm resume, Girard Gibbs is experienced in litigating securities class and non-class actions and has successfully prosecuted numerous complex class cases on behalf of injured investors. *See* Levine Decl., Ex. D. Girard Gibbs has investigated the auction rate securities market since its collapse in February 2008 and has filed the initial case against Wells Fargo under the PSLRA. Girard Gibbs has been contacted by more than 2,000 auction rate securities investors, has interviewed Class members, and has retained consultants knowledgeable in auction rate securities. Girard Gibbs is thus in a unique position to assess the claims, damages and needs of Class members, and is well-qualified to represent their interests. Girard Gibbs has access to numerous individuals, businesses and charities that would be willing to provide testimony or participate as non-lead plaintiffs if necessary to further the interests of the case. This factor is critical here, as the case alleges widespread, systemic non-disclosures and misrepresentations. Accordingly, the Van Dyke Group's selection of Lead Counsel should be approved.

///
///
///
///
///
///

## CONCLUSION

For the foregoing reasons, the Van Dyke Group satisfies the requirements of the PSLRA for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B). The Van Dyke Group respectfully requests that this Court: (1) appoint the Van Dyke Group as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and (2) approve its selection of Girard Gibbs as Lead Counsel.

Dated: June 13, 2008               Respectfully submitted,

**GIRARD GIBBS LLP**

_/s/ Jonathan K. Levine_
Jonathan K. Levine

Daniel C. Girard
Aaron M. Sheanin
Christina H. C. Sharp
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

**Proposed Lead Counsel**

## CERTIFICATE OF SERVICE

I, Jonathan K. Levine, hereby certify that on June 13, 2008, I caused the foregoing document to be filed electronically with the United States District Court for the Northern District of California's through the Court's mandated ECF service. Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of June, 2008 at San Francisco, California.


_____/S/ Jonathan K. Levine_____

1  Daniel C. Girard (State Bar No. 114826)
   dcg@girardgibbs.com
2  Jonathan K. Levine (State Bar No. 220289)
   jkl@girardgibbs.com
3  Aaron M. Sheanin (State Bar No. 214472)
   ams@girardgibbs.com
4  Christina H. C. Sharp (State Bar No. 245869)
   chc@girardgibbs.com
5  **GIRARD GIBBS LLP**
   601 California Street, Suite 1400
6  San Francisco, CA 94108
   Telephone: (415) 981-4800
7  Facsimile:  (415) 981-4846

8  Attorneys for Plaintiff Lindell Van Dyke,
   As Trustee For The Van Dyke Family Trust,
9  and Class Member Sandra Olsen

10

11  **UNITED STATES DISTRICT COURT**

12  **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13
   LINDELL VAN DYKE, AS TRUSTEE FOR            )  **Case No. CV-08-1962 (JSW)**
14 THE VAN DYKE FAMILY TRUST,                  )
   Individually And On Behalf of All Others    )
15 Similarly Situated,                         )  **[PROPOSED] ORDER GRANTING THE**
                                               )  **VAN DYKE GROUP'S MOTION FOR**
16              Plaintiff,                     )  **APPOINTMENT AS LEAD PLAINTIFF**
                                               )  **AND APPROVING LEAD PLAINTIFF'S**
17         v.                                  )  **SELECTION OF COUNSEL**
                                               )
18 WELLS FARGO & CO. and WELLS FARGO           )
   INVESTMENTS, LLC,                           )  Date:     August 22, 2008
19                                             )  Time:     9:00 a.m.
                                               )  Location: Courtroom 2, 17th Floor
20              Defendants.                    )
                                               )
21

22

23

24

25

26

27

28

- 1 -

[PROPOSED] ORDER

Upon consideration of the motions and supporting papers filed by the movants for lead plaintiff in the above-captioned actions and for good cause shown,

**IT IS HEREBY ORDERED THAT:**

1. The Motion Of The Van Dyke Group For Appointment As Lead Plaintiff And Approval Of Selection Of Counsel is **GRANTED**;

2. Plaintiff Lindell Van Dyke and class member Sandra Olsen are hereby **APPOINTED** to serve as Lead Plaintiff in this action, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995. The Van Dyke Group has complied with the requirements of the PSLRA, has the largest financial interest in this action and meets the relevant requirements of Fed. R. Civ. P. 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). The Van Dyke Group is therefore appointed to serve as Lead Plaintiff in this action.

3. The law firm of Girard Gibbs LLP is hereby **APPOINTED** to serve as Lead Counsel for the Class, pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995, in the above-captioned action. The presumptive Lead Plaintiff selects counsel to represent the Class under the PSLRA, subject to Court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). As Girard Gibbs is experienced in the prosecution of securities class actions and will adequately represent the interests of Class members, the Court approves the Van Dyke Group's selection of counsel to represent the Class.

**SO ORDERED.**

DATED: _____, 2008      _____
                                   THE HONORABLE JEFFREY S. WHITE
                                   UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

I, Jonathan K. Levine, hereby certify that on June 13, 2008, I caused the foregoing document to be filed electronically with the United States District Court for the Northern District of California's through the Court's mandated ECF service.  Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of June, 2008 at San Francisco, California.


                                                */S/ Jonathan K. Levine*