David C. Powell (SBN 129781)
Email: dpowell@reedsmith.com
Heather B. Hoesterey (SBN 201254)
Email: hhoesterey@reedsmith.com
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922
Telephone:   +1 415 543 8700
Facsimile:    +1 415 391 8269

Sarah R. Wolff
Email: swolff@reedsmith.com
Michael S. Leib
Email: mleib@reedsmith.com
REED SMITH LLP
10 S. Wacker Dr., Suite 4000
Chicago, IL 60606-7507
*admitted pro hac vice*
Telephone:   +1 312 207 1000
Facsimile:    +1 312 207 6400

Thomas O. Jacob (SBN 125665)
Office of General Counsel
Wells Fargo & Co.
MAC A0194-266
45 Fremont Street, 26th Floor
San Francisco, CA 94105
Telephone:   +1 415 396 4425
Facsimile:    +1 415 975 7864

Attorneys for Defendants Wells Fargo & Co.,
Wells Fargo Investments, LLC, Wells Fargo
Institutional Securities, LLC, Wells Fargo
Brokerage Services, LLC, and Wells Fargo
Bank, N.A.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDELL VAN DYKE, AS TRUSTEE FOR THE VAN DYKE FAMILY TRUST, and SANDRA OLSEN, Individually And On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO & CO.; WELLS FARGO INVESTMENTS, LLC; WELLS FARGO INSTITUTIONAL SECURITIES, LLC; WELLS FARGO SERVICES, LLC and WELLS FARGO BANK, N.A.<br><br>Defendants. | No.: CV 08 1962 (JSW)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Date:        July 31, 2009<br>Time:       9:00 a.m.<br>Place:       Courtroom 11<br><br>Honorable Jeffrey S. White |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................1

STATEMENT OF FACTS ...................................................................3

    A.    The Auction Rate Securities Market .........................................3

    B.    Plaintiffs' General Allegations .................................................4

    C.    Plaintiffs' Allegations Relating to Lead Plaintiffs Van Dyke and Olsen ...................4

        1.    Lindell Van Dyke's ARS Purchases .........................4

        2.    Sandra Olsen's ARS Purchases ...............................5

    D.    Defendants Were Not the Underwriter, Manager, or Auction Agent ..............5

ARGUMENT ........................................................................................6

I.    Plaintiffs' Claims Under Section 10(b) and Rule 10b-5 (Count I) Should Be Dismissed for Failure to State a Claim ..............................6

    A.    Plaintiffs Fail to Allege any Misleading Statements or Omissions with the Specificity Required by FRCP 9(b) and the PSLRA ..............................6

        1.    WFIS and WFBS Should be Summarily Dismissed Because Plaintiffs Have Not Made any Allegations Against Those Two Defendants ..............7

        2.    Plaintiffs Have Not Alleged any Material Misstatements by WFI ..............7

        3.    Defendants Had No Duty to Disclose the Information Plaintiffs Claim Was Omitted ..............8

    B.    Plaintiff's Bare-Bones Scienter Allegations, Pled Generally Against all Defendants, Fail to Give Rise to a Strong Inference of Scienter as Required by the 1934 Act and the Supreme Court ..............11

        1.    By Lumping all Defendants Together, Plaintiffs Fail to Identify any Facts Specific to any One Defendant that Give Rise to Scienter. ..............12

        2.    Plaintiffs' Own Allegations Show that Defendants Did Not Have a Fraudulent Intent. ..............14

    C.    Plaintiffs Cannot Plead Reliance Because the Characteristics and Risks of ARS Were Known in the Marketplace ..............15

        1.    Plaintiffs are Not Entitled to a Presumption of Reliance Based on Alleged Omissions of Material Fact ..............15

        2.    Plaintiffs are Not Entitled to a Presumption of Reliance Under the Fraud-on-the-Market Theory ..............16

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

D.    Plaintiffs Have Not Adequately Alleged Economic Loss or Loss Causation...............17

1.    Plaintiffs Have Not Pled What Their Actual Loss is or How It
      Was Caused by any Alleged Misrepresentation or Omission.........................17

2.    The Amended Complaint Reveals that Plaintiffs Cannot Plead or
      Prove Loss Causation............................................................................................18

II.    Plaintiffs' Claim under Section 20(a) (Count II) Should be Dismissed for Failure to
       State a Claim... ......................................................................................................................20

CONCLUSION......... ......................................................................................................................20

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

## CASES

Page

Affiliated Ute Citizens of Utah v. United States,
   406 U.S. 128, 92 S.Ct. 1456 [31 L.Ed.2d 741] (1972) ...................................... 15, 16

In re Apple Computer Sec. Litigation,
   886 F.2d 1109 (9th Cir. 1989) ......................................................................... 15, 16

Basic Inc. v. Levinson,
   485 U.S. 224, 231-32, 108 S. Ct. 978, 983, 99 L. Ed.2d 194, 208 (1988)............................... 10

Binder v. Gillespie,
   184 F.3d 1059 (9th Cir. 1999) ......................................................................... 15, 17

Bondar v. Bank of America Corp.,
   No. 08-CV-2599 (JSW) (N.D. Cal. Jan. 22, 2009) ................................................. 13

Briggs v. United States,
   564 F.Supp.2d 1087 (N.D. Cal. 2008) ................................................................. 7

In re Burlington Coat Factory Sec. Litigation,
   114 F.3d 1410 (3d Cir. 1997).......................................................................... 14

Collier v. Aksys Ltd.,
   No. 3:04CV1232 (MRK), 2005 WL 1949868, at 13 (D. Conn. Aug. 15, 2005) .................... 19

Conley v. Gibson,
   355 U.S. 41, 78 S.Ct. 99 [2 L.Ed.2d 80] (1957) .................................................. 18

Defer LP v. Raymond James Fin'l., Inc.,
   No. 08-CV-3449 (S.D.N.Y. Dec. 1, 2008) ........................................................... 13

Desaigoudar v. Meyercord,
   223 F.3d 1020 (9th Cir. 2000) ........................................................................... 7

Dura Pharmaceuticals, Inc. v. Broudo,
   544 U.S. 336, 125 S.Ct. 1627 [161 L.Ed.2d 577] (2005) ........................................ 17, 18

Ernst & Ernst v. Hochfelder,
   425 U.S. 185 (1976) ........................................................................................ 11

In re Gilead Sciences Sec. Litigation,
   536 F.3d 1049 (9th Cir. 2008) .......................................................................... 19

Glazer Capital Management, LP v. Magistri,
   549 F.3d 736 (9th Cir. 2008) ........................................................................... 12

Heliotrope General Inc. v. Ford Motor Corp.,
   189 F.3d 971 (9th Cir. 1991) .............................................................................. 3

In re Levi Strauss & Co. Sec. Litigation,
   527 F.Supp.2d 965 (N.D. Cal. 2007) ................................................................. 20

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Metzler Investment GMBH v. Corinthian College, Inc.,
    540 F.3d 1049 (9th Cir. 2008) ....................................................................3, 13, 18, 19

Poulos v. Caesars World, Inc.,
    379 F.3d 654 (9th Cir. 2004) .....................................................................15, 16

Ronconi v. Larkin,
    253 F.3d 423 (9th Cir. 2001) .....................................................................11, 13

Rubke v. Capital Bancorp, Ltd.,
    551 F.3d 1156 (9th Cir. 2009) ...................................................................8, 10, 16

Seibert v. Sperry Rand Corp.,
    586 F.2d 949 (2d Cir. 1978).......................................................................8, 10, 16

In re Silicon Graphics, Inc.,
    183 F.3d 970 (9th Cir. 1999) .....................................................................7, 8, 11

Southland Sec. Corp. v. INSpire Insurance Solutions, Inc.,
    365 F.3d 353 (5th Cir. 2004) .....................................................................12

Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.,
    ---, U.S. -- 128 S.Ct. 761 [169 L.Ed.2d 627] (2008)...............................6

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308, 127 S.Ct. 2499 [168 L.Ed.2d 179] (1976) ...............................3, 11, 14

Tuchman v. DSC Commc'n Corp.,
    14 F.3d 1061 (5th Cir. 1994) .....................................................................14

In re Van Wagoner Funds, Inc. Sec. Litigation,
    382 F.Supp.2d 1173 (N.D. Cal. 2004).......................................................3

In re Verisign, Inc., Derivative Litigation,
    531 F.Supp.2d 1173 (N.D. Cal. 2007) .......................................................12

Vess v. Ciba-Geigy Corp. USA,
    317 F.3d 1097 (9th Cir. 2003) ...................................................................6

**FEDERAL STATUTES**

15 U.S.C. § 78u-4(b)(1)(B)...............................................................................7, 8

15 U.S.C. § 78u-4(b)(2) ...................................................................................11

15 U.S.C. § 78u-4(b)(4) ...................................................................................18

Fed. Rule of Civ. Proc. 9 .................................................................................6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1        Defendants Wells Fargo & Co., Wells Fargo Investments, LLC ("WFI"), Wells Fargo

2   Institutional Securities, LLC ("WFIS"), Wells Fargo Brokerage Services, LLC ("WFBS"), and

3   Wells Fargo Bank, N.A. ("Wells Fargo Bank") (collectively as "Defendants") respectfully submit

4   their Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss, as

5   follows:

6

7                      **INTRODUCTION**

8

9        This case arises from the unprecedented collapse of the credit markets.  In 2007 and 2008,

10  Lead Plaintiffs Lindell Van Dyke and Sandra Olsen (collectively, "Plaintiffs") purchased auction

11  rate securities ("ARS"), which are generally sold at periodic auctions.  Recently, however, these

12  auctions have failed, meaning that Plaintiffs have been unable to sell their ARS.  Not surprisingly,

13  this collapse has led to a multitude of lawsuits, with investors filing claims against anyone even

14  remotely involved in ARS.  Despite Defendants' limited involvement in ARS, Plaintiffs have

15  brought this action on behalf of themselves and a purported class, claiming that Defendants

16  deceptively marketed ARS by describing them as safe, liquid investments.  Plaintiffs allege that

17  Defendants' actions caused the market price of ARS to be artificially inflated and that the ARS

18  declined in value when the auctions failed.  Plaintiffs claim primary violations of the federal

19  securities laws by WFI, WFIS, and WFBS, while pursuing secondary-liability claims against Wells

20  Fargo & Co. and Wells Fargo Bank for control-person liability.

21       Plaintiffs' First Amended Class Action Complaint (the "Amended Complaint"), however,

22  fails to satisfy the heightened pleading standards governing federal securities claims.   Despite

23  adding two new defendants that did not appear in the original complaint, WFIS and WFBS,

24  Plaintiffs have alleged *no facts* regarding any specific conduct by either of those two defendants.

25  Plaintiffs further fail to allege any specific misleading statements or omissions by WFI.  Indeed,

26  rather than pleading with the specificity and "great detail" required under the Federal securities laws

27  and the Federal Rules of Civil Procedure, Plaintiffs impermissibly lump all five of the defendants

28  together as one amorphous (and non-existent) entity, "Wells Fargo."

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Plaintiffs also fail to identify any specific facts showing that any of the Defendants had the

2    requisite intent to commit fraud.  In fact, given that Plaintiffs allege that the ARS market operated

3    for twenty-three years without disruption, the strongest inference that can be drawn from Plaintiffs'

4    allegations is that, at the time Plaintiffs purchased ARS, Defendants had no intent to commit fraud

5    but rather thought Plaintiffs' ARS would continue to be safe, liquid investments.

6    The Amended Complaint suffers from substantive defects as well.  While Plaintiffs allege

7    that they relied on the market price in purchasing ARS, the risks of ARS were known to the market

8    for years prior to Plaintiffs' purchases.  Thus, under Plaintiffs' theory, the market would have

9    already accounted for this information, and the price could not have been inflated.  Further, Plaintiffs

10   themselves allege that information about the safety and liquidity of ARS entered the marketplace in

11   March 2005, when the Securities and Exchange Commission, the Financial Accounting Standards

12   Board, and the "Big Four" Accounting firms adopted positions that ARS were not cash equivalents

13   but long-term investments that depended on broker-dealers to provide liquidity.  According to

14   Plaintiffs, however, the value of their ARS did not decline until February 2008—nearly three years

15   later.  As such, Plaintiffs cannot show that their "loss" resulted from the alleged misstatements.

16   Moreover, Plaintiffs do not even identify their alleged loss.

17   Plaintiffs' Amended Complaint fails to meet the heightened pleading standards imposed by

18   Congress and the Federal Rules of Civil Procedure, and should be dismissed with prejudice.

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1

2                                    **STATEMENT OF FACTS**[1]

3

4       **A.      The Auction Rate Securities Market**

5

6              ARS are bonds or preferred stocks with interest rates or dividend yields that are re-set

7       through periodic "Dutch" auctions, generally held every 7, 28, 35, or 49 days. (*See* Am. Compl. ¶¶

8       3, 42, 43.) ARS are typically auctioned at par value, with only the interest rates or dividend yields

9       fluctuating through the auctions. (*Id.* ¶¶ 41, 42.)

10             At each auction, holders of ARS can place one of three order types: (1) a "hold" order to

11      retain the security regardless of the interest or dividend rate set by the auction, (2) a "hold-at-rate"

12      order to hold the ARS only if the rate set by auction reaches a specified level and to sell if it does

13      not, and (3) a "sell" order to sell the ARS at par regardless of the rate set by auction. (Am. Compl.

14      ¶ 48.) Typically, prospective buyers submit bids through a broker-dealer for a specific amount of

15      ARS at a specified interest or dividend rate. (*Id.* ¶ 47.) The broker-dealers then submit the bids to

16      an auction agent who administers the auction. (*Id.*) Bids at successively higher rates are accepted

17      until all available securities are sold. (*Id.*) The interest or dividend rate is then set at the lowest rate

18      sufficient to cover all securities available for sale (the "clearing rate"). (*Id.*) If, however, there are

19      not enough bids to cover all of the securities up for sale, the auction "fails." (*Id.* ¶ 54.) When an

20      ────────────────

21      1 The statement of facts is gleaned from the Amended Complaint, documents referenced in the
         Amended Complaint, documents publicly filed with the Securities Exchange Commission ("SEC"),
22      and news articles. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, ---, 127 S. Ct.
         2499, 2509, 168 L. Ed.2d 179, 193 (2007) ("courts must consider the complaint in its entirety, as
23      well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in
         particular, documents incorporated into the complaint by reference, and matters of which a court
24      may take judicial notice"); *Metzler Inv. GMBH v. Corinthian Coll., Inc.*, 540 F.3d 1049, 1064 n.7
         (9th Cir. 2008) (SEC filings are subject to judicial notice); *Heliotrope Gen. Inc. v. Ford Motor
25      Corp.*, 189 F.3d 971, 980-81 (9th Cir. 1991) (taking "judicial notice that the market was aware of the
         information contained in news articles submitted by the defendants"); *In re Van Wagoner Funds,
26      Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1178 n.1 (N.D. Cal. 2004) (White, J.) ("Documents whose
         contents are alleged in a complaint and whose authenticity no party questions, but which are not
27      physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to
         dismiss. Such consideration does not convert the motion to dismiss into a motion for summary
         judgment.").

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  auction fails, none of the ARS are sold and the interest rate automatically re-sets to a "maximum

2  rate" that applies until the next auction.  (*Id.*)  The maximum rate is set by a formula specified in the

3  offering documents.  (*Id.*)

4

5  **B.      Plaintiffs' General Allegations**

6

7          Plaintiffs generally allege that broker-dealers such as UBS, Lehman Brothers, Merrill Lynch,

8  Deutsche Bank, Piper Jaffray, Stifel Nicolaus, and Goldman Sachs supported the ARS market and

9  prevented failed auctions by placing "support bids" to purchase ARS for their own account.  (Am.

10  Compl. ¶¶ 61-62, 65, 68-75, 79, 85.)  Plaintiffs throw in a conclusory allegation that "Wells Fargo

11  placed support bids in auctions for the securities for which it served as the broker-dealer." (*Id.* ¶ 93.)

12  Plaintiffs do not, however, identify any specific auctions in which any Defendant placed support

13  bids—including any auctions involving the ARS purchased by Van Dyke or Olsen.

14          In August 2007, several of the leading broker-dealers began allowing small numbers of

15  auctions to fail.  (Am. Compl. ¶¶ 79, 85.)  These failures were only "a small fraction of the entire

16  [ARS] market, however, and the failures were not widely known to the market or [ARS] investors."

17  (*Id.* ¶ 79.)  Six months later, on February 13, 2008, the ARS market suffered an unprecedented crash

18  when 87% of auctions failed after "all major broker-dealers" stopped supporting the auctions. (*Id.* ¶

19  86.)  This crash was the first ever in the twenty-three-year history of the ARS market, which had

20  operated without serious problem since 1984.  (*Id.* ¶¶ 36, 81.)

21

22  **C.      Plaintiffs' Allegations Relating to Lead Plaintiffs Van Dyke and Olsen**

23

24          **1.      Lindell Van Dyke's ARS Purchases**

25

26          Plaintiff Van Dyke began purchasing ARS well before the alleged market failures.  In June

27  2007, Van Dyke went to Wells Fargo Bank to meet with his personal banker, Rebecca Schaefer.

28  (Am. Compl. ¶¶ 110-11.)  According to Van Dyke, Schaefer "assured" him "that the seven day

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1   instruments were safe, could provide the liquidity he required, and had a better interest rate than

2   other . . . options." (*Id.* ¶ 112.)  "Based upon Ms. Schaefer's representations," Van Dyke purchased

3   ARS in the first week of June 2007. (*Id.* ¶ 113.)  Van Dyke sold all of those ARS by July 2, 2007.

4   (*Id.* at Attach. A.)    On July 5 and July 6, 2007, Van Dyke again purchased ARS, which he then sold

5   by July 26, 2007. (*Id.* ¶ 114 & Attach. A.)  In early January 2008, Van Dyke made a third ARS

6   purchase, this time allegedly "based" on a representation by Schaefer that ARS were "safe and

7   liquid." (*Id.* ¶¶ 116, 117.)  Schaefer allegedly told Van Dyke that Judy Keng, a broker for WFI,

8   would process the transactions. (*Id.* ¶¶ 110, 117.)  Plaintiffs do not allege Van Dyke had any

9   conversations with Keng or anyone else from WFI.

10

11          **2.      Sandra Olsen's ARS Purchases**

12

13          Plaintiff Olsen also began purchasing ARS well before the alleged market failures.  In April

14   2007, Olsen met with Donald Duarte to open a brokerage account. (Am. Compl. ¶ 123.)  Plaintiffs

15   do not identify which entity Duarte worked for, only that he was a "Wells Fargo financial

16   consultant." (*Id.*)  Then, on May 2, 2007, Olsen funded a non-discretionary brokerage account and

17   on May 10, 2007, Olsen invested in ARS. (*Id.* ¶¶ 123, 125 & Attach. A.)  Plaintiffs allege that

18   "Olsen was informed that the securities purchased were bonds and that she could liquidate the

19   investments at any time on one week's notice." (*Id.* ¶ 125.)  Plaintiffs do not allege *who* made that

20   representation to Olsen.

21

22   **D.     Defendants Were Not the Underwriter, Manager, or Auction Agent**

23

24          According to the Amended Complaint, Plaintiffs currently own nine different ARS. (Am.

25   Comp. at Attach. A.)  Plaintiffs do not plead that Defendants were the underwriter, manager, or

26   auction agent for any of those ARS.  Nor do the prospectuses filed with the SEC for those ARS

27   identify any of the Defendants as the underwriters, managers, or auction agents. (*See* RJN ¶ 3, Ex. C

28   at 2, 27, 59; RJN ¶ 4, Ex. D at 2, 27, 59; RJN ¶ 5, Ex. E at 14, 30; RJN ¶ 6, Ex. F at 32; RJN ¶ 7, Ex.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    G at 28, 47; RJN ¶ 8, Ex. H at 40, 45, 87; RJN ¶ 9, Ex. I at 27, 50, 58; RJN ¶ 10, Ex. J at 12-13; RJN

2    ¶ 11, Ex. K at 12, 13, F-25, F-35, F-46.)  In other words, Defendants did not manage or participate in

3    the auctions for Plaintiffs' ARS in any way.  Instead, WFI merely placed orders at Plaintiffs' request

4    with participating dealers to buy ARS for Plaintiffs.   WFIS and WFBS service institutional clients

5    and had no connection with Plaintiffs' retail purchases of ARS.  (*See* Am. Comp. ¶¶ 16-17.)

6

7                                          **ARGUMENT**

8

9    **I.      Plaintiffs' Claims Under Section 10(b) and Rule 10b-5 (Count I) Should Be Dismissed
             for Failure to State a Claim.**

10

11              In Count I of the Amended Complaint, Plaintiffs allege that three of the Defendants, WFI,

12   WFIS, and WFBS, violated Section 10(b) of the Securities and Exchange Act of 1934 ("1934 Act")

13   and SEC Rule 10b-5(b).  (Am. Comp. ¶¶ 170-86.)  To state a claim under those provisions, Plaintiffs

14   must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a

15   connection between the misrepresentation or omission and the purchase or sale of a security; (4)

16   reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."

17   *Stoneridge Inv.  Partners, LLC v. Scientific-Atlanta, Inc.*, --- U.S. ---, 128 S. Ct. 761, 768, 169 L. Ed.

18   2d 627, 637 (2008).  Here, Plaintiffs have failed to plead virtually every one of these elements.  For

19   this reason, Count I should be dismissed.

20

21   **A.      Plaintiffs Fail to Allege any Misleading Statements or Omissions with the
             Specificity Required by FRCP 9(b) and the PSLRA.**

22

23              Plaintiffs asserting securities fraud claims under the 1934 Act face substantially higher

24   pleading burdens than most federal court litigants.  Federal Rule of Civil Procedure ("FRCP") 9(b)

25   requires plaintiffs asserting fraud claims to "state with particularity the circumstances constituting

26   fraud."  Fed.R.Civ.P. 9(b).  Specifically, a plaintiff must plead "'the who, what, when, where, and

27   how' of the misconduct charged," as well as "what is false or misleading about a statement, and why

28   it is false."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations omitted);

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   *see also Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000).  The Private Securities

2   Litigation Reform Act of 1995 (the "PSLRA") further requires plaintiffs alleging securities fraud to

3   "specify each statement alleged to have been misleading, the reason or reasons why the statement is

4   misleading, and, if an allegation regarding the statement or omission is made on information and

5   belief, the complaint shall state with particularity all facts on which that belief is formed."

6   15 U.S.C. § 78u-4(b)(1)(B).  According to the Ninth Circuit, this statutory command means that "a

7   plaintiff must provide a list of all relevant circumstances in ***great detail***."  *In re Silicon Graphics,*

8   *Inc.*, 183 F.3d 970, 984 (9th Cir. 1999) (emphasis added).  Here, Plaintiffs fail to meet these exacting

9   standards.

**1.   WFIS and WFBS Should be Summarily Dismissed Because Plaintiffs Have Not Made any Allegations Against Those Two Defendants.**

13   In the Amended Complaint, Plaintiffs have added two new defendants that were not named

14   in the original complaint—WFIS and WFBS.  Both of these defendants service institutional

15   investors. (Am. Comp. ¶¶ 16-17.)  Not surprisingly, therefore, the Amended Complaint contains

16   ***absolutely no facts*** regarding any specific conduct by either WFIS or WFBS in connection with

17   Plaintiffs.  According to the Amended Complaint, Plaintiffs purchased their ARS solely through

18   WFI, and Plaintiffs do not allege that they had any communications with WFIS or WFBS. (*See id.*

19   ¶¶ 108-29.)   Because no class has been certified, only the sufficiency of the named Plaintiffs' claims

20   are before the court. *See Briggs v. United States*, 564 F. Supp. 2d 1087, 1092 (N.D. Cal. 2008).  As

21   such, Plaintiffs' claims against WFIS and WFBS should be dismissed.

**2.   Plaintiffs Have Not Alleged any Material Misstatements by WFI.**

24   Plaintiffs also fail to allege any material misrepresentations by WFI.  According to the

25   Amended Complaint, Van Dyke's contact at WFI was Judy Keng. (Am. Comp. ¶ 110.)  But Van

26   Dyke fails to identify ***any*** conversations or communications with Keng or anyone else at WFI. (*See*

27   *id.* ¶¶ 108-121.)  Similarly, Olsen does not identify any ARS-related communications with any

28   individual alleged to have worked for WFI.  While Olsen alleges that she discussed investing in

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   short-term bonds with a financial consultant, Donald Duarte, she does not allege which Defendant

2   Duarte worked for.  Moreover, Olsen does not allege that Duarte made *any* misstatements regarding

3   ARS, only that Duarte said that a bond trader would identify suitable bonds and someone "would

4   consult with Ms. Olsen again when the funds were ready to be invested."  (*Id.* ¶¶ 122-29.)  To satisfy

5   the PSLRA's exacting requirements, Plaintiffs are required to "specify each statement alleged to be

6   misleading," (15 U.S.C. 78u4(b)(1)(B)), and to "provide a list of all relevant circumstances in *great*

7   *detail*."  *Silicon Graphics*, 183 F.3d at 984 (emphasis added).  Here, Plaintiffs have failed to specify

8   any statement WFI made that is alleged to be misleading.  As such, Plaintiffs' claims against WFI

9   should be dismissed.

10

11        **3.        Defendants Had No Duty to Disclose the Information Plaintiffs Claim
                      Was Omitted.**

12

13        For the same reason discussed above, Plaintiffs fail to allege any omissions by WFI, as

14   Plaintiffs do not allege any ARS-related conversations with any WFI representative.  (*See* Am.

15   Comp. ¶¶ 108-29.)  As such, Plaintiffs have failed to meet the PSLRA's pleading requirements for

16   an omission.

17        Furthermore, even if the Court were to find that Plaintiffs adequately pled the existence of an

18   omission regarding the purchase of ARS, any such omission would not be actionable.  Under the

19   federal securities laws, there is no duty to disclose information that is in the public domain.  *See*

20   *Heliotrope*, 189 F.3d at 980-81 (no duty to disclose where information allegedly omitted was

21   reported in news articles); *see also Rubke v. Capital Bancorp, Ltd.*, 551 F.3d 1156, 1162-63 (9th Cir.

22   2009) ("it is pointless and costly to compel firms to reprint information already in the public

23   domain"); *Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978) (same).  Here, the

24   information Plaintiffs claim was omitted—that ARS were long-term investments which depended on

25   broker-dealer support bids to provide liquidity—had been in the public domain for years before

26   Plaintiffs purchased their ARS.[2]

_____

27   [2] As discussed in Sections I.B.2 and I.D.2 below, even with this information in the public domain,
     the ARS market continued functioning without disruption.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    For example, in May 2006, the SEC issued a press release announcing that it had entered into

2    a consent decree (the "SEC Order") settling an Administrative Proceeding brought against fifteen

3    ARS broker-dealers, none of which were any of the Defendants in this action. The SEC Order and

4    press release made clear that broker-dealers were bidding for their own accounts to prevent failed

5    auctions, and that there were liquidity risks associated with ARS. (*See* RJN ¶¶ 1-2, Exs. A (May 31,

6    2006 SEC Order) at 5-6 and B (Press Release).)  The press widely reported the details of the SEC

7    investigation and the broker-dealers' involvement in the ARS market. *See* Robert Schroeder,

8    *Brokers Pay SEC Over Auction-rate Violation*, Dow Jones Business News, May 31, 2006, RJN ¶ 12,

9    Ex. L; *Three Auction Agent Firms Settle With US SEC*, Reuters, Jan. 9, 2007, RJN ¶ 13, Ex. M;

10   Siobhan Hughes, *Deutsche Bank, Bank of NY, Wilmington Trust Settle With SEC*, Associated Press,

11   Jan. 9, 2007, RJN ¶ 14, Ex. N.  Curiously, Plaintiffs referred to the SEC Order in their original

12   complaint, (*see* Complaint ¶ 30), but omit it from their Amended Complaint.

13   The SEC investigation was not even the first time that the risks and characteristics of ARS

14   were reported to the public.  Plaintiffs allege that in March of 2005, the "Big Four" accounting firms,

15   the Financial Accounting Standards Board ("FASB"), and the SEC adopted positions that ARS "do

16   not qualify as 'cash equivalents.'"  (Am. Comp. ¶ 98.)  The media immediately reported that ARS

17   were not cash equivalents and depended on broker-dealers to provide liquidity.  In fact, in March of

18   2005, *The Wall Street Journal* reported that ARS were long-term investments that should not be

19   classified as cash equivalents, and that "investors rely on the broker-dealers who conduct the

20   auctions to provide liquidity . . . in the event an auction fails, existing investors are left holding their

21   securities . . . with no access to their funds."  Allison Bisbey Colter, *Auction-Rate Securities Under*

22   *Fire—Amid Pressure, Companies Stop Grouping Investments*, Wall Street J., Mar. 24, 2005, RJN ¶

23   15, Ex. O; *see also* Stephen Taub, *Auction-Rate Securities: Short Term or Long?*, Economist.com,

24   Mar. 24, 2005, RJN ¶ 16, Ex. P.

25   Even the publicly-available prospectuses filed with the SEC for each of the ARS that

26   Plaintiffs purchased disclosed that ARS are long-term investments that may not be liquid.  Most of

27   those prospectuses also disclosed that auctions might fail, that broker-dealers were trading for their

28   own accounts, and that broker-dealers *could* provide liquidity for ARS, but were *not obligated* to do

so.  For example, the prospectus for the PIMCO California Municipal Income Fund III, Series B

ARS, in which Olsen invested, was filed on December 19, 2002, more than four years prior to

Plaintiffs' first ARS purchases in May and June of 2007, and contains numerous and repeated risk

disclosures:

- "Broker-Dealers may maintain a secondary trading market in the [ARS] outside of Auctions; however, they have no obligation to do so, and there can be no assurance that a secondary market for the [ARS] will develop or, if it does develop, that it will provide holders with a liquid trading market."  (RJN ¶ 3, Ex. C at intro. & 18, 35.)

- "You may not be able to sell your [ARS] at an Auction if the Auction fails . . . As a result, your investment in [ARS] may be illiquid."  (*Id.* at 3, 18.)

- "The Broker-Dealer Agreements provide that a Broker-Dealer may submit Orders in Auctions for its own account . . . If a Broker-Dealer submits an Order for its own account in any Auction of [ARS], it may have knowledge of Orders placed through it in that Auction and therefore have an advantage over other Bidders."  (*Id.* at 35.)

- "A Broker-Dealer also may hold [ARS] for its own account."  (*Id.* at 9, 31.)

(*See also* RJN ¶ 4, Ex. D at intro. & 3, 9, 18, 31, 33, 35; RJN ¶ 5, Ex. E at intro. & 2, 12, 26, 27, S-19; RJN ¶ 6, Ex. F at intro. & 2-3, 12, 27-28, S-20; RJN ¶ 7, Ex. G at 2, 6, 12, 30, 32; RJN ¶ 8, Ex. H at 2, 9, 12, 54, 57, 58; RJN ¶ 9, Ex. I at 2, 5, 7, 34, 36-37; RJN ¶ 10, Ex. J at 13; RJN ¶ 11, Ex. K at 13.)

Thus, all of the information that Plaintiffs allege was omitted was already publicly available.  *See Heliotrope*, 189 F.3d at 980-81 n.18 (taking "judicial notice that the market was aware of the information contained in news articles submitted by the defendants").  Defendants, therefore, did not violate any duty to disclose that information.  *Id.* at 980-81; *Rubke*, 551 F.3d at 1162-63; *Seibert*, 586 F.2d at 952.

Further, because the information was in the public domain, it was part of the "total mix" available to investors when Plaintiffs purchased ARS.  An omission is not "material" under the 1934 Act unless its disclosure would have "significantly altered the 'total mix' of information made available."  *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32, 108 S. Ct. 978, 983, 99 L. Ed.2d 194, 208 (1988).  Accordingly, because disclosure of the information, which was already in the public domain, could not have altered the total mix available to investors, Plaintiffs cannot plead that any

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  omission of that information was material.

2          The Amended Complaint does not meet the heightened pleading standards of FRCP 9(b) or

3  the PSLRA.  Plaintiffs have not alleged any actionable material misstatements or omissions by WFI,

4  WFIS, or WFBS.  Accordingly, Plaintiffs' claims should be dismissed.

5     **B.     Plaintiff's Bare-Bones Scienter Allegations, Pled Generally Against all**
          **Defendants, Fail to Give Rise to a Strong Inference of Scienter as Required by**
6          **the 1934 Act and the Supreme Court.**

7

8          In addition to failing to adequately plead a misrepresentation or omission, Plaintiffs also fail

9  to adequately plead scienter.  Under the PSLRA, plaintiffs pursuing a Rule 10b-5 claim must "state

10  with particularity facts giving rise to a strong inference that the defendant acted with" scienter, that

11  is "a mental state embracing intent to deceive, manipulate, or defraud." 15 U.S.C. § 78u-4(b)(2);

12  *Tellabs*, 551 U.S. at ---, 127 S. Ct. at 2507, 168 L. Ed.2d at 190 (quoting *Ernst & Ernst v.*

13  *Hochfelder*, 425 U.S. 185, 193-94 and n.12, 96 S. Ct. 1375, 1381 and n.12, 47 L. Ed.2d 668, 677 and

14  n.12 (1976)).  To meet this requirement, a plaintiff "must plead, ***in great detail***, facts that constitute

15  strong circumstantial evidence of deliberately reckless or conscious misconduct." *Silicon Graphics*,

16  183 F.3d at 974 (emphasis added).  Furthermore, "plaintiffs proceeding under the PSLRA can no

17  longer aver intent in general terms of mere 'motive and opportunity' or 'recklessness,' but rather,

18  must state specific facts indicating no less than a degree of recklessness that strongly suggests actual

19  intent." *Metzler*, 540 F.3d at 1066 (quoting *Silicon Graphics*, 183 F.3d at 979). "To meet this

20  pleading requirement, the complaint must contain allegations of specific contemporaneous

21  statements or conditions that demonstrate the intentional or the deliberately reckless false or

22  misleading nature of the statements when made." *Id.* (quoting *Ronconi v. Larkin*, 253 F.3d 423, 432

23  (9th Cir. 2001)).  Moreover, under the PSLRA, "an inference of scienter must be more than merely

24  plausible or reasonable -- it must be cogent and at least as compelling as any other opposing

25  inference of nonfraudulent intent." *Tellabs*, 551 U.S. at ---, 127 S. Ct. at 2504-05, 168 L. Ed.2d at

26  188.  Here, Plaintiffs' scienter allegations are woefully inadequate.

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**1.    By Lumping all Defendants Together, Plaintiffs Fail to Identify any Facts Specific to any One Defendant that Give Rise to Scienter.**

Perhaps the most glaring problem with Plaintiffs' scienter allegations is that the allegations do not distinguish between Defendants and, therefore, none of the scienter allegations can be attributed to any one particular Defendant.  Throughout the Amended Complaint, Plaintiffs lump all five Defendants together by referring to "Wells Fargo," which Plaintiffs define as all five Defendants. (*See, e.g.* Am. Compl., *passim* and at ¶¶ 82-85, 90-104, 111, 113-15, 118-20, 122-28, 140, 155; *see also id.* ¶¶ 141, 143, 147-48, 150-53, 159 (referring collectively to "Defendants").)  In the "Additional Scienter Allegations" section, for example, Plaintiffs refer <u>in each paragraph</u> to "Wells Fargo" without distinguishing between Defendants. (*Id.* ¶¶ 130-36.)  But "[i]t is not sufficient under the PSLRA to allege scienter against defendants as a group." *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1207 (N.D. Cal. 2007); *see also Eshelman v. OrthoClear Holdings, Inc.*, No. C 07-1429 JSW, 2008 WL 171059, at *7 n.2 (N.D. Cal. Jan. 18, 2008) (White, J.) (requiring plaintiffs to "set out each particular allegation they maintain against each separate . . . Defendant"); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) ("we do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded").  As such, Plaintiff's allegations of scienter fail and their Amended Complaint must be dismissed.

Plaintiffs' Amended Complaint is also deficient in that it does not identify a specific agent or a specific Defendant who made a material misrepresentation or omission with the requisite scienter. The PSLRA requires Plaintiffs "to plead scienter with respect to those individuals who actually made the false statements." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008) (rejecting "collective scienter" theory).  Thus, for purposes of determining scienter against a corporation, the Court should "look to the state of mind of [an] individual corporate official or officials who make or issue the statement . . . rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment." *Southland*, 365 F.3d at 366-67.  Here, however, Plaintiffs not only fail to identify any misstatements or

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1   omissions by any one corporate official, (*see* Section I.A above), Plaintiffs do not assert any

2   "allegations of specific contemporaneous statements or conditions that demonstrate" scienter in any

3   such corporate official. *Metzler*, 540 F.3d at 1066 (quoting *Ronconi*, 253 F.3d at 432). This

4   deficiency is fatal to Plaintiffs' claims.

5       The scienter allegations in the Amended Complaint also lack the specificity required by the

6   PSLRA. For example, while Plaintiffs make conclusory allegations regarding "management

7   directives" and "written materials and uniform sales presentations," they do not offer any specifics

8   about the contents of those purported communications, the authors, recipients, sources, or even

9   which "Wells Fargo" entity was responsible for such "directives" and "written materials." (*See* Am.

10  Comp. ¶¶ 97, 99-100.)[3] Furthermore, Plaintiffs allege that "a Wells Fargo employee" prepared a

11  document in November 2008 recommending that customers not purchase ARS, but, again, do not

12  identify the "Wells Fargo" entity involved, the document's author and recipients, nor the source of

13  Plaintiffs' allegation. As with Plaintiffs' lumping and "collective scienter" problems, Plaintiffs' lack

14  of specificity in pleading is fatal to their claims. *See Heliotrope*, 189 F.3d at 980 (finding allegations

15  insufficient under PSLRA where plaintiffs failed to identify the contents, recipients, and source of

16  documents).

17      Finally, while Plaintiffs spend a considerable amount of space alleging a general business

18  motive for Defendants to commit fraud, (*see* Am. Comp. ¶¶ 130-36), the Ninth Circuit has held that

19  merely identifying a motive is not sufficient to meet the requirements of the PSLRA. *Metzler*, 540

---

21  [3] Plaintiffs' extensive pleading failure stems, in part, from their failure to allege the individual role, if any, that each Defendant played in the ARS market generally, and in Plaintiffs' ARS specifically.
22  Indeed, counsel for Plaintiffs have made these same allegations of "management directives" as well as "written materials and uniform sales presentations" in numerous other ARS-related class actions
23  involving other defendants. *See, e.g., Bondar v. Bank of America Corp.*, No. 08-CV-2599 (JSW) (N.D. Cal. Jan. 22, 2009) (Bondar Am. Comp. ¶¶ 106-110, 178) (RJN ¶ 17, Ex. Q); *Defer LP v.*
24  *Raymond James Fin'l., Inc.*, No. 08-CV-3449 (S.D.N.Y. Dec. 1, 2008) (Defer Am. Comp. ¶¶ 89-92, 108, 157) (RJN ¶ 18, Ex. R.); *Humphrys v. TD Ameritrade Holding Corp.*, No. 08-CV-2912
25  (S.D.N.Y. Feb. 13, 2009) (Humphrys Am. Comp. ¶¶ 84-87, 132) (RJN ¶ 19, Ex. S); *Kraemer v. Deutsche Bank, AG*, No. 08-CV-2788 (S.D.N.Y. Jan. 9, 2009) (Kraemer Am. Comp. ¶¶ 105-108,
26  182) (RJN ¶ 20, Ex. T); *In re Merrill Lynch Auction Rate Securities Litig.*, No. 08-CV-3037 (S.D.N.Y. Dec. 10. 2008) (Merrill Lynch Am. Comp. ¶¶ 153-154, 157, 160-163, 236) (RJN ¶ 21, Ex.
27  U); *In re UBS Auction Rate Securities Litig.*, No. 08-CV-2967 (S.D.N.Y. Sept. 6, 2008) (UBS Am. Comp. ¶¶ 150-151, 158-161, 277) (RJN ¶ 22, Ex. V).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    F.3d at 1066. As one court has stated, "if incentive compensation could be the basis for an

2    allegation of fraud, the executives of virtually every corporation in the United States would be

3    subject to fraud allegations." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424 (3d

4    Cir. 1997) (citing *Tuchman v. DSC Commc'n Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). Further,

5    as with Plaintiffs' other scienter allegations, these motive allegations are improperly alleged against

6    "Wells Fargo," without identifying any particular Defendant.

7           For all the reasons stated above, Plaintiffs have failed to meet the pleading standards of the

8    PSLRA for scienter and the Amended Complaint should be dismissed.

9
                  **2.     Plaintiffs' Own Allegations Show that Defendants Did Not Have a**
10                         **Fraudulent Intent.**

11

12          As stated above, to plead the required "strong inference" of scienter, "an inference of scienter

13   must be more than merely plausible or reasonable—it must be cogent and at least as compelling as

14   any opposing inference of nonfraudulent intent." *Tellabs*, 127 S.Ct. at 2504-05. Here, however,

15   Plaintiffs have not made such a showing.

16          According to Plaintiffs' own Amended Complaint, ARS have been in existence since 1984

17   without any kind of market disruption until "the auction failures that began in August 2007," which

18   "were the first failures in the history of the auction rate securities market that occurred because

19   several broker-dealers refused to continue to support the auctions." (Am. Compl. ¶¶ 81, 36.) Olsen,

20   however, purchased her ARS in May of 2007 and Van Dyke purchased his first ARS in June 2007,

21   months before the August 2007 auction failures. Certainly, without any facts supporting scienter

22   against any single Defendant (or any single corporate official), there can be no finding that Plaintiffs

23   have pled a "strong" inference of scienter that is "cogent and at least as compelling as any opposing

24   inference of nonfraudulent intent." *Tellabs*, 127 S. Ct. at 2504-05. Instead, the stronger inference is

25   that Defendants thought the securities, which had been in existence for nearly twenty-five years

26   without market disruption, were safe, liquid investments.

27          Because Plaintiffs' Amended Complaint fails to adequately allege scienter, it should be

28   dismissed.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**C.   Plaintiffs Cannot Plead Reliance Because the Characteristics and Risks of ARS Were Known in the Marketplace.**

One of the required elements of a Section 10(b) and Rule 10b-5 claim is reliance. *See Heliotrope*, 189 F.3d at 975-76. Usually, "the plaintiff must show individual reliance on a material misstatement." *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989). But since individual reliance would doom their class claims,[4] Plaintiffs allege that they are entitled to a presumption of reliance. Plaintiffs have failed, however, to adequately plead reliance of any kind.

**1.   Plaintiffs are Not Entitled to a Presumption of Reliance Based on Alleged Omissions of Material Fact.**

Plaintiffs first invite the court to apply the presumption of reliance for omissions that the Supreme Court recognized in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54, 92 S. Ct. 1456, 1472, 31 L. Ed. 2d 741, 761 (1972). In the *Affiliated Ute* lines of cases, reliance may only be presumed in cases "involving primarily a failure to disclose" where the defendants had "an obligation to disclose." *Id.* The Ninth Circuit has held "that the *Affiliated Ute* presumption should not be applied to cases that allege both misstatements and omissions unless the case can be characterized as one that primarily alleges omissions." *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999). The presumption does not apply to "mixed claims" of both misrepresentations and omissions. *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666-67 (9th Cir. 2004). Here, setting aside Plaintiffs' fatal failure to allege the facts of any omissions with sufficient particularity, Plaintiffs are not entitled to the *Affiliated Ute* presumption for omissions.

Plaintiffs' fraud claims are based primarily, if not completely, on misrepresentations. Although Plaintiffs broadly contend that Defendants withheld facts concerning the safety and liquidity of ARS, (Am. Compl. ¶¶ 99-100), Plaintiffs actually allege (albeit not with sufficient detail)

---

4 To the extent Plaintiffs' claims do not invoke a presumption of reliance, their class claims should be dismissed as each individual class member would need to "show individual reliance on a material misstatement," and such a requirement would prevent Plaintiffs "from proceeding with a class action, since individual issues then would . . . overwhelm[] the common ones." *See Apple Computer*, 886 F.2d at 1113; *see also Basic Inc.*, 485 U.S. at 242, 108 S.Ct. at 989, 99 L. Ed. 2d at 215 (1988).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    that Defendants affirmatively misrepresented ARS as safe and liquid investments, and omitted to

2    disclose that they were not.  As Plaintiffs allege in the "Reliance on Material Omissions" section of

3    the Amended Complaint:

4           In light of Defendants' knowledge that their sales force routinely represented to
            investors that [ARS] were safe, highly liquid investments with interest rates
5           established by periodic auctions, it was materially misleading for Defendants to fail to
            correct the record and state expressly that [ARS] were, among other things, neither
6           safe nor liquid investments and/or had interest rates managed by broker dealers.

7

8    (*Id.* ¶ 159.)  Moreover, Van Dyke specifically alleges that he purchased ARS "based" on the

9    representation that ARS "were safe and liquid." (*Id.* ¶¶ 116-17.)  These allegations establish that

10   Plaintiffs' claims are based primarily on alleged misrepresentations and, therefore, not entitled to the

11   *Affiliated Ute* presumption.  *See Poulos*, 379 F.3d at 667 (rejecting presumption where claims were

12   "based as much on what is *there* as what is purportedly missing") (emphasis in original).

13          Furthermore, even if this case did primarily involve omissions, Plaintiffs still would not be

14   entitled to a presumption of reliance because the allegedly omitted information was in the public

15   domain.  The *Affiliated Ute* presumption applies only where a defendant has a duty to disclose.  *See*

16   *Affiliated Ute*, 406 U.S. at 153-54.  As discussed in Section I.A.3 above, there is no duty to disclose

17   information that is publicly available. *See Heliotrope*, 189 F.3d at 980-81; *Rubke*, 551 F.3d at 1162-

18   63; *Seibert*, 586 F.2d at 952.  Accordingly, Plaintiffs are not entitled to the *Affiliated Ute*

19   presumption of reliance for omissions.

20          2.      **Plaintiffs are Not Entitled to a Presumption of Reliance Under the Fraud-
                    on-the-Market Theory.**
21

22          Plaintiffs also contend, in the alternative, that they are entitled to the fraud-on-the-market

23   presumption of reliance.  That presumption applies where a plaintiff claims that he or she relied on

24   the market price of a security, but that the market itself was misled by the defendant's fraudulent

25   conduct.  *Apple Computer*, 886 F.2d at 1114-15.  The fraud-on-the-market theory, however, is not

26   applicable here.

27          As an initial matter, fraud-on-the-market reliance applies only where the security trades in an

28   efficient market, "one that obtains material information about a company and accurately reflects that

1   information in the price of the stock." *Binder*, 184 F.3d at 1064-65 (citation omitted).  Here, despite

2   conclusory allegations that the ARS market was efficient, Plaintiffs have not pleaded any facts that

3   show an efficient market.

4         Moreover, fraud-on-the-market reliance does not apply where, as here, the information

5   allegedly concealed was already known to the marketplace.  As the Ninth Circuit has stated:

> 6   In a fraud-on-the-market case, an omission is actionable under section 10(b) and Rule
> 7   10b-5 'only if the [allegedly undisclosed] information has not already entered the
> market.' . . . If the market has become aware of the allegedly concealed information,
> 8   'the facts allegedly omitted by the defendant would already be reflected in the stock's
> prices' and 'the market will not be misled.' . . . In such a case, the element of reliance
> 9   will not be satisfied, and plaintiff's claims based on a fraud on the market theory will
> fail.

10

11   *Heliotrope*, 189 F.3d at 975-76 (citations omitted).  As discussed in Section I.A.3. above, the

12   information alleged to have been misrepresented was known to the market for years, long before

13   Plaintiffs purchased ARS.  *See id.* at 980-81 n.18 (taking "judicial notice that the market was aware

14   of the information contained in news articles submitted by the defendants").  Thus, Plaintiffs cannot

15   plead fraud-on-the-market reliance.

16         Because Plaintiffs have not sufficiently alleged an efficient market the Amended Complaint

17   should be dismissed.  Because the allegedly concealed information was in the marketplace years

18   before Plaintiffs purchased their ARS, Plaintiffs cannot plead or prove reliance and their Amended

19   Complaint should be dismissed with prejudice.

20       **D.**    **Plaintiffs Have Not Adequately Alleged Economic Loss or Loss Causation.**

21

22         To plead a claim under Section 10(b) and Rule 10b-5, a plaintiff must plead both an

23   economic loss and loss causation.  Here, Plaintiffs have failed to adequately plead either, and have

24   even affirmatively alleged facts that demonstrate a lack of loss causation.

25       **1.**    **Plaintiffs Have Not Pled What Their Actual Loss is or How It Was**
                    **Caused by any Alleged Misrepresentation or Omission.**

26

27         In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346-47, 125 S. Ct. 1627, 1633, 161

28   L. Ed. 2d 577, 587-88 (2005), the Supreme Court held that a securities fraud plaintiff must plead

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    both an economic loss and "loss causation"—*i.e.*, "that the defendant's misrepresentation (or other

2    fraudulent conduct) proximately caused the plaintiff's economic loss." *See also* 15 U.S.C. § 78u-

3    4(b)(4) (same).  As the Court stated, a plaintiff "must provide the defendant with 'fair notice of what

4    the plaintiff's claim is and the grounds upon which it rests.'" *Dura*, 544 U.S. at 346, 125 S. Ct. at

5    1634, 161 L. Ed. 2d at 588 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L. Ed. 2d

6    80, 85 (1957)).  The Court went on to say that:

7
          [I]t should not prove burdensome for a plaintiff who has suffered an economic loss to
8         provide a defendant with some indication of the loss and the causal connection that
          the plaintiff has in mind.  At the same time, allowing a plaintiff to forgo giving any
9         indication of the economic loss and proximate cause that the plaintiff has in mind
          would bring about harm of the very sort the [securities] statutes seek to avoid.
10

11   *Dura*, 544 U.S. at 347, 125 S. Ct. at 1634, 161 L. Ed. 2d at 588.  Plaintiffs' allegations fail to meet

12   these standards.

13           Plaintiffs allege that "[a]s a result of the materialization of the concealed risks, the perceived

14   values of [ARS] have declined substantially."  (Am. Comp. ¶ 155.)  Plaintiffs speculate that

15   disclosure of these risks would have resulted in "higher interest and dividend rates both before and

16   after the collapse of the auction market."  (*Id.* ¶ 154.)  But nowhere do they plead *any* facts

17   indicating what the decline in value actually is.  In the absence of these details, it is impossible to

18   evaluate the basis for Plaintiffs' claimed loss or how any such loss was proximately caused by

19   Defendants' alleged misstatements.  Plaintiffs cannot meet *Dura*'s standards for pleading loss

20   causation by merely pleading that the ARS purchase price was inflated because of the purported

21   misrepresentations and omissions.  *See Dura*, 544 U.S. at 346-48, 125 S. Ct. at 1634, 161 L. Ed. 2d

22   at 588 (allegation that plaintiffs purchased at artificially inflated price is not alone sufficient to plead

23   loss causation); *Metzler*, 540 F.3d at 1064 (same).  Because Plaintiffs fail to adequately plead their

24   loss, the Amended Complaint should be dismissed.

25           2.       **The Amended Complaint Reveals that Plaintiffs Cannot Plead or Prove
                       Loss Causation.**
26

27           The Ninth Circuit has interpreted *Dura* to mean that "the complaint must allege that the

28   defendant's 'share price fell significantly after the truth became known.'"  *Metzler*, 540 F.3d at

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    1062. In other words, "the complaint must allege that the practices that the plaintiff contends are

2    fraudulent were revealed to the market and caused the resulting losses." *Id.* at 1063. Here, however,

3    the facts demonstrate that Plaintiffs cannot show loss causation.

4         Plaintiffs' theory is that Defendants made "omissions and misleading statements of material

5    fact" about the liquidity risks of ARS, and that the "subsequent disclosure of those risks" caused

6    Plaintiffs to sustain damages. (Am. Comp. ¶¶ 151, 145.) The fallacy in Plaintiffs' logic is that the

7    risks of ARS were publicly disclosed *years* before Plaintiffs purchased ARS and the market did not

8    react. As discussed earlier, the nature and risks of ARS about which Plaintiffs complain came to

9    light, at the latest, in May of 2006 when the SEC revealed that broker-dealers were intervening to

10   prevent failed auctions.   (*See* RJN ¶¶ 1-2, Exs. A at pp. 11-12 & B at p. 20.) According to

11   Plaintiffs, however, the price of ARS did not decline until February 2008, twenty-one months later.

12   (Am. Comp. ¶ 166.)

13        While the Ninth Circuit has indicated that markets may take some time to react to a

14   disclosure, courts have long held that a gap of this magnitude precludes a finding of loss causation.

15   *See In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1058 (9th Cir. 2008) (stating that a "*limited*

16   temporal gap … does not render a plaintiff's theory of loss causation per se implausible") (emphasis

17   added); *see also Dura*, 544 U.S. at 343, 125 S. Ct. at 1632, 161 L. Ed. 2d at 586-87 (stating "the

18   longer the time between purchase and sale . . . the more likely that other factors caused the loss").

19   For example, in *Collier v. Aksys Ltd.,* No. 3:04CV1232 (MRK), 2005 WL 1949868, at *13 (D.

20   Conn. Aug. 15, 2005), the court dismissed a claim for lack of loss causation where the alleged loss

21   occurred seven months after the disclosure, calling it "a virtual lifetime in the market." Here the

22   price of ARS did not fall until *at least* twenty-one months after the risks of ARS were publicly

23   disclosed—three times as long. Accordingly, Plaintiffs cannot "allege that the practices that the

24   plaintiff contends are fraudulent were revealed to the market and caused the resulting losses."

25   *Metzler*, 540 F.3d at 1063. As such, Plaintiffs' Amended Complaint should be dismissed with

26   prejudice.

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**II.    Plaintiffs' Claim under Section 20(a) (Count II) Should be Dismissed for Failure to State a Claim.**

In Count II, Plaintiffs claim that Wells Fargo & Co. and Wells Fargo Bank should be held liable under Section 20(a) of the 1934 Act for control person liability.  But Section 20(a) imposes secondary liability and, therefore, to plead a claim under that section a plaintiff must first sufficiently allege a primary violation of the federal securities laws.  *See, e.g.*, *Heliotrope*, 189 F.3d at 978; *In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 991 (N.D. Cal. 2007).  Because Plaintiffs fail to adequately allege a claim under Section 10(b) and Rule 10b-5, their claim under Section 20(a) fails as well and should be dismissed.

## CONCLUSION

Plaintiffs have failed to state a claim upon which relief can be granted, and Plaintiffs cannot amend to do so.  Accordingly, and for all the reasons stated herein, Defendants Wells Fargo & Co., Wells Fargo Investments, LLC, Wells Fargo Institutional Securities, LLC, Wells Fargo Brokerage Services, LLC, and Wells Fargo Bank, N.A. respectfully request that this Court grant their Motion to Dismiss and enter an Order dismissing the First Amended Class Action Complaint of Plaintiffs Lindell Van Dyke and Sandra Olsen with prejudice.

DATED:  April 20, 2009

REED SMITH LLP

By    / s /  David C. Powell
David C. Powell
Attorneys for Defendants Wells Fargo & Co., Wells Fargo Investments, LLC, Wells Fargo Institutional Securities, LLC, Wells Fargo Brokerage Services, LLC, and Wells Fargo Bank, N.A.